Michael J. Shagan et al., Transferees of 249 West 30th Street Corporation v. Commissioner.
Shagan v. Commissioner
Docket No. 28139.
United States Tax Court
1952 Tax Ct. Memo LEXIS 141; 11 T.C.M. (CCH) 730; T.C.M. (RIA) 52223; July 8, 1952
*141 Bernard A. Green, Esq., for the petitioner. Ellyne E. Strickland, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: This proceeding involves transferee liabilities. The petitioners are transferees of the assets of a corporation, 249 WEST 30TH STREET CORPORATION. The deficiencies in income and declared value excess-profits taxes of the corporation for the year ended December 31, 1942, are as follows: $9,491.44
Declared Value Excess-Profits Tax
4,685.19
The questions to be decided are as follows: (1) Whether improved real estate was sold by the corporation rather than its individual stockholders in 1942, as the respondent has determined. (2) Whether the respondent erred in reducing the deduction for depreciation of the property in the amount of $906.31. Findings of Fact The corporation known as 249 WEST 30TH STREET CORPORATION, hereinafter referred to as "the corporation," was organized under the laws of the State of New York, on June 26, 1936, and it acquired an improved piece of realty located at 247-249 West 30th Street, New York City on July 17, 1936. This property *142 was the only property owned by the corporation at any time. The realty is a piece of property having a 50 foot frontage, and is 100 feet deep. The building located thereon is loft type, 16 stories high, having three elevators, a fire tower, and a fire tower court. The building was constructed in about 1926, and is fireproof, and [of] brick and steel construction. It is located in the section of New York City where the fur business is conducted, and its tenants in 1942 were engaged in the fur and allied businesses. In 1942, the corporation's outstanding stock, 30 shares, was owned or controlled by a partnership known as Seligman and Latz, by Samuel Wasserman, and by Neil S. Waterman, each owning or controlling 10 shares. Although the stock was held in the aforesaid names, Edmund Waterman had an interest in the stock issued in Neil Waterman's name, and others, besides Samuel Wasserman, had interests in the stock held in Wasserman's name. In July, 1942, the officers of the corporation were as follows: Neil S. Waterman, president; Edwin K. Latz, vice-president; Samuel Wasserman, secretary; Lucius P. Wasserman, treasurer; A. S. Behr, assistant secretary; and Edmund Waterman, assistant *143 treasurer. Shagan, Behr, and the Wassermans were members of a law firm, Wasserman, Behr and Shagan. The directors of the corporation were Lucius Wasserman, Neil Waterman, and Edwin Latz. The corporation's tax returns for 1942 were filed with the colector for the second district of New York. The petitioners are the transferees of the assets of the corporation. The petitioners Michael J. Shagan and Lucius P. Wasserman each received assets of the corporation having a value of $7,655.96, which amount represents the extent of the transferee liability of each. The respondent has determined that $14,339.92 represents the transferee liability of Edmund Waterman, and such liability is not denied. At some time before July 23, 1942, Edmund M. Simmons, a broker, made an unsolicited inquiry to Michael J. Shagan whether the property at 247-249 West 30th Street was available for sale. Simmons, at first, did not disclose the name of any prospective purchaser. Shagan told Simmons that the corporation would not sell or offer to sell the property, but that the stockholders, as individuals, would consider selling their stock. Thereafter, there was discussion, and Shagan and Max Levin, an attorney *144 representing the prospective purchasers, drafted a proposed agreement for the sale of the stock in the corporation, as of May 31, 1942, by the then stockholders, Seligman and Latz, Neil and Edmund Waterman, and Samuel Wasserman to Irene and Madelaine Gross, and Lillian and Jules Bauer for $60,000 in cash, in addition to the assumption of the first mortgage of $125,000, and a second, purchase-money mortgage of $70,000. The second, purchase-money mortgage was to be executed by the the purchasers simultaneously with the execution of the contract to purchase the stock of the above-named individuals. The proposed purchase and sale of stock was not consummated, and the draft of a contract of sale of the stock was never executed. At the time Simmons first approached Shagan, neither the property nor the stock in the corporation had been put on the market for sale. Shagan then advised the stockholders of the corporation that the corporation should not sell or offer to sell the property, but that the corporation should convey the property to its stockholders in liquidation, and that the corporation should be dissolved. Waterman, Wasserman, and Shagan agreed that the corporation would not *145 sell the property, and that the stock of the corporation would be sold if that could be done. Shagan knew the respective tax consequences of a liquidation of the corporation, and of a sale of the property by the corporation. Wasserman also advised that the corporation should be liquidated and the property transferred to the stockholders, personally. His view, as expressed in a letter to Edmund Waterman, dated August 3, 1942, was that although the "acquisition of the real estate by the stockholders, in place of the stock, will result in a taxable profit, I think that in the long run we will be better off to get rid of the corporation, whether we hold on to the property or sell it." (Ex. 1) When the negotiations to sell the stock in the corporation ended unsuccessfully, the stockholders were advised to dissolve the corporation and to acquire, personally, the title to the property upon liquidation of the corporation. At about the time of August 3, 1942, preparations were made for the dissolution of the corporation. One of the steps taken was the purchase of the 10 shares of stock owned by Seligman and Latz by the other stockholders, Waterman and Wasserman, which was done about August *146 3. Following that purchase, Waterman and Wasserman proceeded to undertake to dissolve the corporation. On August 12, 1942, the stockholders of the corporation met and voted to dissolve the corporation then and forthwith, and to distribute its assets to the stockholders. On August 12, 1942, a Certificate of Dissolution of the corporation was executed by Shagan, vice-president, and Samuel Wasserman, secretary. The Certificate of Dissolution was duly filed. It was also filed with the New York Department of Taxation on August 13, 1942. On December 8, 1942, the Secretary of State of the State of New York issued his formal certificate dissolving the corporation. The Department of Taxation of New York State would not give its consent to the dissolution of the corporation before December 8, 1942, because it made claim for additional taxes on the accumulated surplus of the corporation and a dispute arose which was not settled until the early part of December. The corporation was effectively dissolved in August, 1942, and thereafter all that remained to be done was to finally close and settle any claims of the State Tax Department against the liquidated corporation. The corporation conveyed *147 the real estate to Samuel Wasserman and Neil Waterman by deed on August 21, 1942, and the deed was duly recorded. After conveyance of the property to the two stockholders, the corporation ceased to operate or to engage in any business activities. On August 28, 1942, Samuel Wasserman and Neil Waterman conveyed, as individuals, the property at 247-9 West 30th Street to Irene and Alice Gross, and Lillian and Jules Bauer by deed which was duly recorded. The purchase price paid by the purchasers was $260,000. Max Levin represented the purchasers in the purchase and sale of the property. In arriving at the amount of the purchase price of $260,000, adjustments were made with respect to rents for the property. In the income tax return filed by the taxpayer corporation for the year 1942 a deduction for depreciation was claimed in the amount of $3,728.56, as follows: The property was described as a brick and steel building which was acquired on July 17, 1936, at a cost of $173,055.00. The depreciation allowed or allowable in prior years was stated to be in the sum of $33,060.74. The remaining cost to be recovered was stated to be $139,994.26. The estimated life used in computing depreciation *148 was stated to be 30 years. The respondent determined that the deduction of $3,728.56 for depreciation, as set out in the preceding paragraph, was excessive to the extent of $906.31, for the reason that depreciation at the rate of $4,223.37 per year had been allowed for the preceding year, and since the property in question had been disposed of at the end of August, 1942, depreciation was deductible for a period of only eight months of that year, which would result in an allowable deduction for depreciation for the year 1942 in the amount of only $2,822.25. For the year 1942, the amount of the allowable deduction for depreciation was only $2,822.25. The 249 West 30th Street Corporation did not offer its property for sale, or invite offers of prospective buyers; it did not authorize any of its officers or directors to consider or negotiate a sale of the property; it did not sell the property. Prior to its conveyance of the property to its stockholders, in liquidation, the corporation did not enter into any agreement for the sale of its property. The negotiations of Waterman, Wasserman, and Shagan, to sell the stock of the stockholders to members of the Gross family, were their *149 individual and personal negotiations and they were not carried on for or in behalf of the corporation. The sale of the property was negotiated by Waterman, Wasserman, and Shagan, as individuals, for and on behalf of all of the individuals who individually owned the property; and no binding agreement of sale with the members of the Gross family was entered into until after the property had been distributed to the individuals in exchange for their stock in the corporation. The purchasers dealt with and paid the proceeds of the sale to the individuals who owned the property. Opinion The respondent contends that the question in this proceeding is controlled by . He argues that the stockholders of the corporation were merely a conduit for a sale by the corporation, that the corporation negotiated the sale and made the sale, and that the profit realized is, therefore, taxable to the corporation. The alleged critical fact which the respondent contends supports his determination is said to be that the buyers for the property were on hand prior to the adoption of the resolution of August 12, 1942, to dissolve the corporation. *150 The respondent relies upon the following authorities in which the rule of Court , has been applied: , certiorari denied ; , aff'd, ; , affirming ; ; ; and . The respondent argues that , is distinguishable upon its facts, the evidence there being that a buyer of property was not obtained prior to adoption of a resolution to dissolve the corporation. The petitioners argue that the facts bring this proceeding within the ambit of ; and they rely, also, upon ; ; ; *151 and (D.C. Ky. Jan. 17, 1952). The question under the issue presented is a question of fact to be determined from all of the evidence of record. The evidence in this proceeding clearly shows that the corporation did not offer its property for sale; it did not invite offers from any broker or prospective buyer; it did not authorize any of its officers or directors to consider or to negotiate a sale of its only asset. The evidence shows, also, that the corporation's stockholders, as individuals, carried on negotiations to sell their stock to prospective purchasers who were, in the first instance, represented by a broker who voluntarily and without any solicitation from the corporation or its officers and directors, let it be known that he had clients who were interested in acquiring the property in question; and that when the negotiations of the individuals to sell their stock failed, the stockholders then decided that they would liquidate the corporation, and take the property in return for their stock. The record is not clear as to the precise time when new negotiations for the purchase and sale of the property *152 (rather than the stock) were undertaken with members of the Gross family, through their attorney. It is possible that some of the new negotiations were undertaken before the conveyance by the corporation of the property to its stockholders in liquidation, and, if so, that fact is not determinative of the question. See , where it was noted that "although some of the negotiations by the stockholders preceded liquidation, the sale of the properties involved was made by the corporation's former stockholders as the individual owners thereof following liquidation." In this proceeding, the sale of the property was made by the former stockholders of the corporation as the individual owners thereof, following liquidation. Accordingly, the question here is controlled by We recognize that the Secretary of State of New York did not issue his Certificate of Dissolution of the corporation until December 8, 1942. The delay in the issuance of the certificate of the Secretary of State was due to the dispute with the New York Department of Taxation over that department's claim that accumulated *153 and undistributed profits of the corporation were subject to a New York State tax, which matter was not related to the conveyance of the property in exchange for stock in the liquidation of the corporation. The issue here, as we understand the position of the parties, is presented upon the understanding that the corporation was effectively dissolved on August 12, 1942, and that the problem with the New York Tax Department was merely part of the winding up of the affairs of the dissolved corporation. The cases which the respondent relies upon have been considered, but the facts here distinguish this proceeding from the authorities cited. The second issue to be decided relates to the respondent's disallowance of the corporation's deduction for depreciation for 1942 to the extent of $906.31. The petitioners have not introduced evidence which clearly establishes that this determination of the respondent was in error, and, accordingly, the disallowance of the depreciation deduction to the extent of $906.31 is sustained. Under this issue, the petitioners rely upon the opinion of a witness they called to testify as an expert upon the useful life of the building as of July 17, 1936, when *154 the corporation acquired the property. His testimony does not show that he had sufficient knowledge of the property in question, and, furthermore, his qualifications as an expert on the subject of the useful life of property of the class involved were not adequately established. His opinion was based upon a superficial estimate which, in turn, was founded mostly upon speculation about the possible future trend of property values in the location of the subject property. Therefore, we are unable to accept his opinion that the building had a useful life of 30 years from July 17, 1936. The question under the second issue has not been clearly stated by the petitioner in that the record made upon trial does not clear up a question of whether the amount of the depreciation deduction for 1942, in the corporation's return, was computed for the entire 12 months of 1942, or for only 8 months of that year. Decision will be entered under Rule 50.